



# SEALED

Office of the United States Attorney
District of Nevada
501 Las Vegas Boulevard South,
Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336

STEVEN W. MYHRE
Acting United States Attorney
District of Nevada
CRISTINA SILVA
Assistant United States Attorney
Nevada Bar No. 13760
501 Las Vegas Blvd., Suite 1100
Las Vegas, Nevada 89101
Telephone: (702) 388-6336
Fax: (702) 388-5087
cristina.silva@usdoj.gov
Attorney for the United States of America

FILED
2017 JUN 30 PM 1:58
U.S. MAGISTRATE JUDGE
BY_____

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>ASHOK KUMAR SEHDEV and<br>JOSE LUIS MONTOYA,<br><br>Defendants. | 2:17-mj-683-CWH<br><br>CRIMINAL COMPLAINT<br><br>Violations:<br><br>18 U.S.C. § 1201(c), – Conspiracy to Commit Kidnapping |

BEFORE a United States Magistrate Judge of the United States District Court for the District of Nevada, the undersigned Complainant, being duly sworn, deposes and states:

**COUNT ONE**
**CONSIPRACY TO COMMIT KIDNAPPING**

Beginning on a date unknown and to on or about June 22, 2017, in the state and federal District of Nevada, **ASHOK KUMAR SEHDEV** and **JOSE LUIS**

MONTOYA, defendants herein, knowingly and willfully combine, conspire and agree together and with other persons known and unknown to unlawfully kidnap VICTIM 1 and VICTIM 2 and hold them for ransom, reward, or otherwise, and willfully transport them in interstate commerce from the State and Federal District of Nevada to the country of Mexico. All in violation of 18 U.S.C. § 1201(c).

### PROBABLE CAUSE AFFIDAVIT

Complainant, Ryan S. Burke, as a Special Agent with the Federal Bureau of Investigation (hereafter, "FBI"), states the following as and for probable cause:

1. Complainant has been employed as a Special Agent with the FBI since October 2012. Currently, Complainant is assigned to the FBI Las Vegas Safe Streets Gang Task Force (hereafter, "SSGTF") and is responsible for investigating violent crimes including but not limited to drug trafficking, kidnapping, extortion, robbery, firearms offenses, as well as investigations into the activities and operations of criminal enterprises. Your Complainant has experience in conducting criminal investigations, including the investigation of criminal groups and conspiracies, as well as the collection of evidence and the identification and use of witnesses.

2. The information used to support this Complaint was derived from the statements of witnesses; physical observations made by law enforcement; and consensually recorded conversations with the defendants. This Complaint contains information necessary to support probable cause to believe that the criminal offenses described herein were committed by the defendants, **ASHOK KUMAR SEHDEV** and **JOSE LUIS MONTOYA,** and is not intended to include each and every fact and

matter observed by your Complainant or known to the Government. Moreover, to the extent that this Complaint contains statements by witnesses, those statements are set forth only in part and in substance and are intended to accurately convey the information, but not to be verbatim recitations.

## FACTS ESTABLISHING PROBABLE CAUSE

3. On June 9, 2017, a person (hereinafter "PR" for person reporting) called the North Las Vegas Police Department (hereinafter "NLVPD") to report that the PR was aware of an imminent kidnapping plot that would be carried out by MONTOYA on behalf of SEHDEV. The PR kept in contact with law enforcement and informed investigators that SEHDEV had offered to pay MONTOYA a significant amount of money to kidnap two individuals located in Las Vegas, Nevada and transport them to Mexico against their will. The PR was purportedly aware of this information because MONTOYA attempted to recruit two close associates of the PR to assist with the kidnapping. Soon after receiving this information, NLVPD referred the case to the FBI SSGTF for further investigation.

4. On June 22, 2017, investigators interviewed one of the close associates of the reporting person (hereinafter "CW-1") that had been approached by MONTOYA to assist with the kidnapping. CW-1 informed investigators that MONTOYA asked him/her to assist with the kidnapping of a person identified herein as "Victim 1" and Victim 1's motion, hereinafter referred to as "Victim 2." The kidnapping request was made on behalf of an Arabian man referred to by MONTOYA as "Shook" (later identified as SEHDEV). MONTOYA told CW-1 that he met SEHDEV through a friend

3

later identified herein as "CV." SEHDEV allegedly offered to pay MONTOYA between $10,000 and $15,000 to take the VICTIMS 1 and 2 from Las Vegas, Nevada to Mexico against their will. MONTOYA informed CW-1 he planned to befriend VICTIM 1 and then surreptitiously force him to consume a significant amount of sleeping pills in order to facilitate the kidnapping. Subsequently, MONTOYA planned to contact VICTIM 2 to alert her of her son's "medical issue" so that he could also surreptiously force her to consumer a significant amount of sleeping pills. CW-1 had discussed the kidnapping with MONTOYA as recently as a few days prior to his/her interview with the FBI. Additionally, CW-1 heard through an associate that SEHDEV had already provided MONTOYA with a vehicle as a partial pre-payment for the kidnapping.

5.   Also on June 22, 2017, investigators decided to interview MONTOYA. Although MONTOYA voluntarily agreed to speak with investigators, he was still informed of his rights according to the FBI FD-395 "Advice of Rights" form, which he signed before providng a statement to investigators. MONTOYA stated he met SEHDEV at CV's house in late 2016 or early 2017. In approximately May 2017, SEHDEV asked MONTOYA to kidnap the two victims and take them to Mexico. MONTOYA stated he also received a vehicle from SEHDEV around this time, but insisited he purchased it from him and it was not an advance payment for the kidnapping. SEHDEV eventually provided MONTOYA with a piece of paper containing VICTIM 1's name and address, which MONTOYA provided to the FBI, and also showed video footage of VICTIM 1 from a CCTV system to MONTOYA. Soon after, MONTOYA personally informed SEHDEV he would conduct the kidnapping for him.

4

SEHDEV believed both victims were illegal aliens and hoped they would not be able to return to the United States if he paid MONTOYA to bring them to Mexico. SEHDEV was supposedly upset with VICTIM 1 because he stole money from SEHDEV. SEHDEV wanted VICTIM 2 kidnapped as well so VICTIM 1 would not have anyone to call in the United States after being kidnapped and taken to Mexico. Upon transporting the victims to Mexico, MONTOYA was instructed by SEHDEV to keep possession of them so he could travel there and instruct them never return to the United States.

6. MONTOYA eventually drove by the VICTIMS' residence to begin developing a strategy to execute the kidnapping. He admitted to receiving instruction from SEHDEV to befriend VICTIM 1 and use sleeping pills to facilitate the kidnapping. MONTOYA was reluctant to provide specifics about the amount of money he would receive for carrying out the kidnapping, but stated at one point that he would receive at least $5,000 from SEHDEV. Although contrary to the initial reporting person's statements and CW-1's statements, MONTOYA insisted that he informed SEHDEV in the beginning of June 2017 that he was no longer interested in carrying out the kidnapping. However, when questioned why MONTOYA retained the piece of paper containing VICTIM 1's information and why CW-1 made statements about being recruited as recently as a few days prior, MONTOYA could provide no explanation.

7. MONTOYA was requested by your Complainant and agreed to consensually record an in-person meeting with SEHDEV to discuss the kidnapping. On June 23, 2017, MONTOYA utilized a concealed audio recorder to record a meeting

5

between him and SEHDEV at CV's residence. The meeting took place at VELASQUEZ's residence because that was where SEHDEV felt most comfortable discussing the kidnapping plot. During the meeting, SEHDEV reiterated to MONTOYA that he would pay him $24,000 to kidnap and transport both VICTIMS to Mexico. SEHDEV also discussed the option of simply killing VICTIM 1 so they did not have to deal with a second victim. As instructed, the meeting concluded with MONTOYA informing SEHDEV that he would finish formulating his plan in the coming days and recontact SEHDEV when he was ready to execute the kidnapping.

8. On June 27, 2017, investigators instructed MONTOYA to contact SEHDEV on his cellular phone to arrange a meeting between MONTOYA and his partner with SEHDEV. SEHDEV invited MONTOYA and his partner, an FBI Confidential Human Source (hereinafter "CHS"), to the motel he owned in North Las Vegas, Nevada. MONTOYA and the CHS then met with SEHDEV at his motel to discuss the kidnapping. The meeting was audio and video recorded by the CHS. During the meeting, SEHDEV reiterated his desire to have the victims kidnapped and taken to Mexico. He also reiterated holding the VICTIMS against their will in Mexico until SEHDEV could travel there to meet with the VICTIMS. SEHDEV confirmed his willingness to pay MONTOYA and the CHS $24,000 to execute the kidnapping. SEHDEV then drove MONTOYA and the CHS to the victims' residence so the CHS was familiar with where the victims lived. While driving by their residence, VICTIM 2 was outside so SEHDEV pointed her out to MONTOYA and the CHS.

9. SEHDEV also informed MONTOYA and the CHS that he would pay for a

rental car that they could use for the kidnapping. They agreed to meet at VELASQUEZ's residence on July 1, 2017 at 10:30 a.m. so SEHDEV could provide them with $2,000 for the rental car. SEHDEV was informed by the CHS that after receiving the money for the rental car, the CHS and MONTOYA would execute the kidnapping as soon as possible. SEHDEV acknowledged and supported the CHS's intentions.

10. Based on your Complainant's training and experience, he has a reasonable belief that the defendants conspired to commit kidnapping and conspired to kidnap persons in a foreign country. Additionally, as evidenced above, overt acts were conducted for the purpose of effecting the objects of both conspiracies.

9. Based on my training an experience there is probable cause to believe that the defendants violated 18 U.S.C. §§ 1201(c).

_____
Special Agent Ryan S. Burke
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me
This 30th day of June, 2017.

_____
HONORABLE CARL W. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

7